Daniel L. ASHLEY, Jr., et ux., Appellants,

v.

Bill BIZZELL, Appellee.

No. 04-82-00592-CV.

Court of Appeals of Texas, San Antonio.

Feb. 20, 1985.

Rehearing Denied April 10, 1985.

Writ filed May 9, 1985.

J. Ken Nunley, Dodson, Nunley & Taylor, Hondo, for appellants.

Enrique Fernandez, Lowery, Foster & Hodge, Del Rio, for appellee.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

TIJERINA, Justice.

This case involves a dispute on a construction contract and alleged construction deficiencies. The trial court, without jury, rendered judgment that appellee, the original plaintiff, recover the sum of $9,420.43 and that appellants recover on their counterclaim the sum of $5,074.71 with an additional award of $300.00 for rent expenses caused by delay in the construction of their house.

In August of 1978 appellants were contemplating the purchase of an unfinished house in Fort Clark Springs and in the process were introduced to appellee, a contractor. The house was purchased and the parties subsequently entered into an oral contract whereby appellee agreed to finish the interior of the house in two weeks for the sum of $9,500.00, which included labor and materials. On October 16, 1978, appellee was fired because appellant claimed that the work was only one-half (½) completed, the workmanship was poor, and the time taken was twice as long as contracted for. Appellants finished the work themselves and through sub-contractors. The counterclaim alleged a breach of express and implied warranties under the Deceptive Trade Practices Act. TEX.BUS. & COM. CODE ANN. § 17.45, *et seq.* Appellee's version of the facts is that the estimated time for completion of the work was three weeks, and that the delay was caused by late deliveries of the appliances and changes in construction plans by appellants. Appellee further contends that he was fired on October 13, 1978 at which time he was within three (3) days from completing the work.

The first two points of error concern questions on evidence and will be addressed jointly. Appellants first claim that there was no evidence to support an award in *quantum meruit* or on the contract because the evidence submitted as to the value of materials and labor was hearsay. Secondly, they complain that the trial court erred in excluding evidence of the value of Mrs. Ashley's work in completing the unfinished contract, as a proper measure of damages.

On the first assignment of error appellant relies entirely on *Steves Sash & Door Co. v. WBH International*, 575 S.W.2d 355, 357 (Tex.Civ.App.—San Antonio 1978, no writ), where the court sustained a contention that the ledger sheets and invoices were inadmissible because of the failure to establish the statutory predicate. The court stated: "[T]here is no evidence indicating that it was the regular course of plaintiff's business for one or more employees who had personal knowledge of the act, event or condition to transmit such information for inclusion in the ledger sheets or invoices." *Id.* at 357. TEX.REV.CIV.STAT.ANN. art. 3737e (Vernon Supp.1985) provides in pertinent part, viz:

Section 1. A memorandum of record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

Unlike the facts in *Steves Sash & Door Co. v. WBH International, supra,* the record in the instant case reflects that appellee as the owner of the construction company had personal knowledge of the exhibits in question. Appellee, as the manager and bookkeeper, ordered and paid for the materials, and paid the workers in accordance with his daily records. His methods of transacting his business could be categorized as crude but, nevertheless, in compliance with the statutory requirements. *See Associates Development Corp. v. W.F. & J.F. Barnes, Inc.,* 614 S.W.2d 876, 880 (Tex.Civ. App.—Waco 1981, writ dism'd), citing *University Savings & Loan Association v. Security Lumber Co.,* 423 S.W.2d 287, 290 (Tex.1967), where the supreme court held that the president of a company was a qualified witness to testify as to the identity and mode of preparation of invoices sought to be introduced as business records even though such witness had no personal knowledge as to the various items or contents of the invoices. We therefore conclude that the evidence as to the value of materials and labor was properly admitted.

The second issue concerns the trial court's exclusion of the testimony of Mr. Alexander, an expert witness called by appellants. They sought to establish through the expert witness, the value of Mrs. Ash-

ley's work in completing the contracted work. The court sustained the objection on the grounds that appellants had failed to establish the proper measure of damages. The colloquy was as follows:

MR. NUNLEY: Your Honor, then I will just take this on bill, because I have established a criteria and *asked the value of Mrs. Ashley's work.* (Emphasis ours.)

THE COURT: Well, don't argue with me. If you want to make a Bill of Exception, until you get the proper measure of damages in here, I don't see any point to go into anything.

Q: Okay, now based on your investigation and your knowledge and experience did you arrive at an opinion on the value of Mrs. Ashley's work in what she did?

A: Yes, I did.

Q: What is that value?

MR. EDWARDS: Objection, it is totally irrelevant, so far as damages go.

The court sustained the objection. Subsequently appellant made his Bill of Exception and the expert witness gave his opinion as to the value of Mrs. Ashley's work.

█ It is appellants' contention that they are entitled to triple damages under the Deceptive Trade Practices Act. In *Ybarra v. Saldana,* 624 S.W.2d 948, 952 (Tex.Civ.App.—San Antonio 1981, no writ), the case cited by appellants, the court held: "[W]hen an owner, upon failure of the contractor to perform takes over the job and completes the work himself, he may recover from the contractor the excess of the reasonable and necessary costs of completion over and above the unpaid portion of the contract price." *Id.* at 952. This ruling was based on evidence which established the reasonable and customary charge of contractors for such work. *Ybarra v. Saldana, supra* at 952, clearly sets out the measure of damages in this type of case to be the excess of the reasonable and necessary cost of completion over and above the unpaid portion of the contract price. *See also* 10 TEX.JUR.3d *Building Contracts* § 41 (1980). "The ac-

tual damages suffered under Sec. 17.-50(b)(1) are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices." *Smith v. Baldwin,* 611 S.W.2d 611, 617 (Tex.1980). The Act does not define actual damages; nevertheless, the term has been construed to mean common law damages. *Smith v. Kinslow,* 598 S.W.2d 910, 915 (Tex.Civ.App. —Dallas 1980, no writ). The court in *Kinslow,* ruled on the measure of damages question stating:

> ... [w]e are of the opinion that in most cases *the reasonable cost of remedying the defects,* or of getting the whole job done elsewhere if there has been a complete failure of performance, is a more precise formulation of the general principle of contract law that the aggrieved owner is entitled to be placed in as good a position as if the contract had been performed. This is the recognized measure for breach of a contract for construction of a building. (Citations omitted.) (Emphasis added.)

*Id.* at 913. Appellant never did establish through the expert witness or any other witness the reasonable and necessary costs of completion over and above the unpaid portion of the contract price. Additionally, appellants failed to present evidence of an economic loss on this issue or a breach of express and implied warranties under the Uniform Commercial Code. *See Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77, 81 (Tex.1977). Accordingly, appellants failed to prove the proper measure of damages. Points of error one and two are overruled.

■ Appellants, through points of error three and four, complain that the trial court erroneously denied the damages sought under the Deceptive Trade Practices Act. "Findings of fact and conclusions of law were not requested or filed, and the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Bishop v. Bishop,* 359 S.W.2d 869, 871 (Tex.1962). In reviewing the record to determine if any evidence supports the judgment and concomitant implied findings, it is proper to consider only the evidence favorable to the issue and to disregard all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916, 918 (Tex. 1978). Appellee testified at length as to the pre-contract negotiation and his work performance. He stated that he agreed to complete the work on the unfinished house for the cost of labor and materials plus $300.00, although he was not provided with a detailed set of plans. Additionally, he testified as to certain changes in the interior construction made by appellants and delays in the delivery dates of the appliances. In support of their claim of deceptive trade practices, appellants alleged that appellee falsely represented that the house being purchased had a total of 3,600 square feet. Appellee argued that he had made no representation that the house contained 3,600 square feet. The record reflects the following testimony during the cross-examination of appellee, Bill Bizzell:

(MR. NUNLEY, Appellant's Attorney)

Q: Did you ever have any discussion with the Ashleys about the size of the house?

A: Not to my knowledge, no. The only discussion we had with any size that would be room sizes in relation to how much it took to make this room and so forth. But the entire size of the house, no.

Q: Well, not to your knowledge or no?

A: Oh, no.

Testimony of a party to a suit is competent to raise an issue of fact. *Johnson v. Buck,* 540 S.W.2d 393, 401 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Thus, because there were no findings of fact and conclusions of law, the trial court's judgment must be viewed as impliedly finding no deceptive trade practices. Points of error three and four are overruled.

Appellee advances seven crosspoints alleging as follows: (1) The court erred in awarding judgment for materials used to correct deficiencies and defects when they did not properly plead an off set; (2) There

was no evidence that the expenditures were used to correct defects and deficiencies and no evidence that the expenditures were reasonable and necessary; (3) Appellants' exhibits 3, 4, 5, and 6 were hearsay; (4) There is no evidence to support the judgment of $300.00 for rent expenses; (5) The trial court erred in not finding that the deceptive trade practices allegation against Rose Bizzell was brought in bad faith and thus deprive her of an award for attorney's fees which are not allowed for an off set judgment; and (7) The trial court erred in awarding one-half of the court costs to each party because appellants were not successful parties.

 The standards of review employed in addressing appellants' points of error are applicable to the review of appellee's cross-points. Findings of fact and conclusions of law were not requested or filed, therefore the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Bishop v. Bishop, supra* at 871. In reviewing the record to determine if any evidence supports the judgment and concomitant implied findings, it is proper to consider only the evidence favorable to the issue and then disregard all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co., supra* at 918. It is within the province of the trier of fact to judge the credibility of the witnesses, the weight to be given their testimony, to resolve conflicts in the testimony, and the trier of fact may draw reasonable inferences and deductions from the evidence and his findings and implied findings may not be disregarded by an appellate court. *Johnson v. Buck, supra* at 411–12.

 In crosspoints one through four, appellee complains that the trial court erred in awarding appellants completion and rent expenses. The record reflects that appellants on their counterclaim presented evidence that they had expended $5,074.71 for materials used in completing the work left unfinished by appellee; however there is no evidence that these ex-

penses were reasonable and necessary. A plaintiff seeking to recover the costs he incurred as a result of the defendant's wrong is limited to the recovery of his reasonable and necessary expenditures. *Dallas Railway & Terminal Co. v. Gossett,* 294 S.W.2d 377, 156 Tex. 252 (1956); *Whataburger, Inc. v. Rutherford,* 642 S.W.2d 30, 33 (Tex.App.—Dallas 1982, no writ). The fact of payment standing alone is no evidence that expenses were reasonable and necessary. *Truck Farm, Inc. v. Allen,* 608 S.W.2d 296, 297 (Tex.Civ.App.—Dallas 1980, no writ). Therefore, the evidence presented by appellants is incompetent to prove the $5,074.71 damages found by the jury. *Harrison v. Dallas Court Reporting College,* 589 S.W.2d 813, 816–17 (Tex.Civ.App.—Dallas 1979, no writ). Likewise, there is no evidence regarding the reasonable rental value of the premises; the jury award of $300.00 cannot stand. Appellee's crosspoint numbers two and four are sustained.

 The trial court, within its prerogative, disregarded the allegation of bad faith on the deceptive trade practices issue. Crosspoint number five is overruled.

 In crosspoints six and seven, appellee complains of the award of attorney's fees to appellant and the splitting of costs between appellants and appellee. The trial court's discretion in awarding attorney's fees is limited to determining whether the successful party's fees should be recovered from his adversary. *Reames v. Reames,* 604 S.W.2d 335 (Tex.Civ.App.—Dallas 1980, no writ). Since the judgment for appellants' damages is not upheld on appeal, there is no basis for awarding attorney's fees to appellants. Similarly, Rule 131 dictates that the successful party to the suit shall recover from his adversary all costs incurred therein. All costs must, therefore, be charged against appellants. Crosspoints six and seven are sustained.

The portion of the judgment awarding recovery to appellee is affirmed. The portion of the judgment awarding recovery to appellants on their counterclaim, including

attorney's fees, is reversed and rendered. The portion of the judgment splitting costs between the parties is reversed and rendered; all costs are charged against appellants.

The judgment of the trial court is affirmed in part; reversed and rendered in part.